IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND

                                   :
EMI APRIL MUSIC, INC., et al.
                                   :
                                   
     v.                            :   Civil Action No. DKC 11-3352
                                   
                                   :
GARLAND ENTERPRISES, LLC, et al.
                                   :

                         **MEMORANDUM OPINION**

     Presently pending and ready for resolution in this copyright infringement case is a motion for default judgment filed by Plaintiffs EMI April Music, Inc., Book of Daniel Music, Lellow Prod., Inc., FCG Music, MG III Music, NMG Music, Jobete Music Co., Inc., and Black Bull Music, Inc. (ECF No. 9). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be granted.

**I.   Background**

     Plaintiffs commenced this action on November 21, 2011. The complaint recites that Defendants Robert Garland, Jr., and Garland Enterprises, LLC, infringed upon Plaintiffs' copyrights to four musical compositions by publicly performing the songs, without a license, at Bobby's Jazz Club in Baltimore, Maryland,

on September 16, 2010.  (ECF No. 1).[1]  Plaintiffs assert that Defendants "knowingly and intentionally violated [their] rights" because the American Society of Composers, Authors, and Publishers ("ASCAP"), of which Plaintiffs are members, contacted Defendants on multiple occasions and advised them of their potential liability for unauthorized performances.  (*Id*. at ¶ 13).  Despite these warnings, Defendants "have continued to perform copyrighted music without permission during the hours that [Bobby's Jazz Club] [is] open to the public for business and presenting musical entertainment."  (*Id*.).  Plaintiffs requested an unspecified amount of statutory damages, attorneys' fees and costs, and a permanent injunction enjoining Defendants from "publicly performing the aforementioned compositions or any of them and from causing or permitting the said compositions to be publicly performed in Defendant's said premises."  (*Id.* at 6).

---

[1] Specifically, Plaintiffs own the copyrights to the following recordings: "Like You'll Never See Me Again," "Mercy Mercy Me (the Ecology)," "Get Ready," and "Happy Birthday." (ECF No. 1-1).  On the evening of September 16, 2010, an investigator hired by the American Society of Composers, Authors, and Publishers ("ASCAP") visited Bobby's Jazz Club and recognized these four songs when they were played.  Plaintiffs attached to their motion for default judgment the declaration of Douglas Jones, ASCAP manager of litigation services for general licensing, which recites that "Plantiffs in this action were randomly selected, by reason of the disc jockeys' choice of songs performed at Defendants' establishment[], and are representative of all of ASCAP's members."  (ECF No. 9-5 ¶ 10).

Defendants were properly served on or about November 30, 2011. (ECF Nos. 5, 6). When they failed to respond within the requisite time period, Plaintiffs moved for entry of default. (ECF No. 7). Default was entered by the clerk on January 31, 2012 (ECF No. 8), and, on February 7, Plaintiffs filed the pending motion for default judgment. (ECF No. 9). To date, Defendants have taken no action in this case.

## II. Standard of Review

Under Fed.R.Civ.P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a default has been previously entered by the clerk and the complaint does not specify a certain amount of damages, the court may enter a default judgment, upon the plaintiff's application and notice to the defaulting party, pursuant to Fed.R.Civ.P. 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). The Fourth Circuit has a "strong policy" that "cases be decided on their merits," *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate

3

where a party is unresponsive, *see S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

"Upon [entry of] default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not." *Lawbaugh*, 359 F.Supp.2d at 422. Fed.R.Civ.P. 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed that amount." *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Management Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). While the court may hold a hearing to consider evidence as to damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to

determine the appropriate sum." *Adkins*, 180 F.Supp.2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' District Council Pension, et al. v. E.G.S., Inc.*, Civ. No. WDQ-09-3174, 2010 WL 1568595, at *3 (D.Md. Apr. 16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

**III. Analysis**

    **A.  Liability**

To establish copyright infringement *via* unauthorized public performance of a work, the plaintiff must show five elements: (1) originality and authorship of the compositions; (2) compliance with the formalities required to secure a copyright under Title 17; (3) the plaintiffs' ownership of the relevant copyrights; (4) the defendant's public performance of the compositions; and (5) the defendant's failure to obtain permission from the plaintiffs or their representatives for such performance. *EMI April Music, Inc. v. White*, 618 F.Supp.2d 497, 504 (E.D.Va. 2009); *see also M.L.E. Music v. Kimble Inc.*, 109 F.Supp.2d 469, 472 (S.D.W.Va. 2000); *Almo Music Corp. v. 77 East Adams, Inc.*, 647 F.Supp. 123, 124 (N.D.Ill. 1986).

Here, Plaintiffs have alleged sufficient facts to establish each element for purposes of default judgment. Specifically, they have alleged that the four songs at issue are original

compositions created and written by specified persons.  (ECF No. 1 ¶ 7; ECF No. 1-1).  The complaint further recites that Plaintiffs and their predecessors in interest have "complied in all respects with Title 17 . . . and secured the exclusive rights and privileges in and to the copyright of each composition."  (ECF No. 1 ¶ 9).  Moreover, Defendants played these songs in public without permission on September 16, 2010 (*id.* at ¶¶ 11, 12, 13(a)), and Plaintiffs owned the copyrights to the protected work at the time of infringement (*id.* at ¶ 10).  These factual allegations are sufficient to satisfy the five elements of Plaintiffs' claims, and Plaintiffs are entitled to entry of default judgment.  *See Controversy Music v. Mason*, No. 5:09-CV-488-BR, 2010 WL 2607229, at *2 (E.D.N.C. June 24, 2010).

    **B.**    **Relief**

    **1.**    **Statutory Damages**

Plaintiffs seek statutory rather than actual damages.  Pursuant to 17 U.S.C. § 504(c)(1), "the copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages . . . in a sum of not less than $750 or more than $30,000 as the court considers just."  The Supreme Court of the United States has recognized that courts have broad discretion to fix damages within that range, and that statutory damages will often serve as a deterrent.  *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231-33

(1952). In exercising this discretion, district courts in this circuit have generally weighed three factors: (1) the expenses saved and profits reaped by the defendants in connection with the infringement; (2) revenue lost by the plaintiffs; and (3) whether the infringement was willful and knowing or innocent. *Arista Records L.L.C. v. Gaines*, 635 F.Supp.2d 414, 418 (E.D.N.C. 2009); *M.L.E. Music*, 109 F.Supp.2d at 474; *Jasperilla Music Co., M.C.A., Inc. v. Wing's Lounge Ass'n*, 837 F.Supp. 159, 161 (S.D.W.Va. 1993). Willfulness may be based on actual or constructive knowledge of the infringement, or reckless disregard of a copyright holder's rights. *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001).

According to the declaration of ASCAP litigation manager Douglas Jones, Defendants were offered a license for periods beginning February 3, 2008, and "if Bobby's Jazz Club "had been properly licensed for the period February 3, 2008 to December 31, 2011, the Defendants would have owed license fees in the amount of $5,888.06." (ECF No. 9-5 ¶¶ 7, 12). "In addition to these lost license fees," Mr. Jones further asserts, "Defendants' unlawful conduct has thus far required ASCAP to incur out-of-pocket expenses of $622.81 – the cost of obtaining evidence of infringement on which this suit is based." (*Id.*). Mr. Jones' declaration additionally demonstrates that ASCAP made repeated efforts to license Bobby's Jazz Club prior to the date

the infringements were observed. (*Id.* at ¶ 8). These included personal visits, telephone calls, and mail correspondence (*id.* at Ex. 1), which put Defendants on notice that their failure purchase a license would lead to litigation (*id.* at ¶ 8). Nevertheless, Defendants continued to play copyrighted music without a license.

Based on the amount of the licensing fee avoided by Defendants, the cost to ASCAP associated with the investigation, and the evidence of Defendants' willful violations, Plaintiffs seek statutory damages in the amount of $16,000.00, or $4,000.00 for each of the four violations at issue. This is less than three times the amount that Defendants saved by not paying for a license, and "[c]ourts often award statutory damages ranging from two to three times" the licensing fee. *Controversy Music*, 2010 WL 2607229, at *3; *see also White*, 618 F.Supp.2d at 508 ("Because of the important deterrent purposes served by statutory damages . . . courts have routinely awarded . . . amounts that arc between two and three times license fees."). This amount is consistent with awards of statutory damages in similar cases in this circuit. *See, e.g., EMI April Music, Inc. v. Rodriguez*, 691 F.Supp.2d 632, 637 (M.D.N.C. 2010) (awarding $77,803.14 in statutory damages when licensing fees totaled $38,901.59); *M.L.E. Music*, 109 F.Supp.2d at 474-75 (awarding $10,000.00 in statutory damages when licensing fees totaled

$3,545.00); *Jasperilla*, 837 F.Supp. at 161-62 (awarding $4,500.00 in statutory damages when licensing fees totaled $1,770.00). Accordingly, a statutory damages award of $16,000.00 is appropriate here.

**2.   Injunctive Relief**

Pursuant to 17 U.S.C § 502, the court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." Injunctive relief often serves as an additional deterrent to statutory damages. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 395 (2006) (Roberts, J., concurring) ("From at least the early 19th century, courts have granted injunctive relief upon a finding of infringement in the vast majority of patent cases. This 'long tradition of equity practice' is not surprising, given the difficulty of protecting a right to *exclude* through monetary remedies." (emphasis in original)). A permanent injunction is appropriate where a threat of continuing infringement exists. *Rodriguez*, 691 F.Supp.2d at 635; *Disney Enter., Inc. v. Delane*, 446 F.Supp.2d 402, 408 (D.Md. 2006); *Jasperilla*, 837 F.Supp. at 161. "In the copyright realm, it has been said that an injunction should be granted if denial would amount to a forced license to use the creative work of another." *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2nd Cir. 2004).

The Supreme Court has provided guidelines for granting permanent injunctive relief: (1) the plaintiff must have "suffered irreparable injury"; (2) "remedies available at law, such as monetary damages, [must be] inadequate to compensate for that injury"; (3) "considering [the] balance of hardships between plaintiff and defendant, remedy in equity [must be] warranted"; and (4) the court must ensure that the "public interest would not be disserved." *eBay*, 547 U.S. at 388.

There is no presumption that a copyright infringement creates an irreparable injury. *eBay,* 547 U.S. at 393-94 (rejecting any "general rule" that injunctions should be issued once infringement is established, absent exceptional circumstances); *Bethesda Softworks, L.L.C. v. Interplay Entm't Corp.*, 452 Fed.Appx. 351, 355 (4th Cir. 2011) (rejecting premise that a copyright infringement creates a rebuttable presumption that a copyright holder is entitled to injunctive relief). Rather, courts evaluating requests for injunctive relief should consider evidence of irreparable harm based on the facts of a particular case. *Bethesda Softworks*, 452 Fed.Appx. at 355 (finding district court did not abuse its discretion in denying a preliminary injunction because the copyrighted material had not been made public, nor could it be made public without permission of the copyright holder). District courts in this circuit have consistently found irreparable harm where music has

been publicly performed, and where it is likely to be publicly performed in the future, in violation of copyright laws. *See, e.g., White*, 618 F.Supp.2d at 510 ("Music cannot be retrieved or destroyed once the public performance has taken place."); *Controversy Music*, 2010 WL 2607229, at *4 ("[O]nce an unauthorized public performance of Plaintiffs' compositions takes place, it cannot be undone, erased, or destroyed-representing the very essence of irreparability.").

Monetary compensation is inadequate where it is likely that the defendant will continue to play music in violation of copyright laws. In *Rodriguez*, 691 F.Supp.2d at 635, the court entered default judgment against a radio station and granted a permanent injunction, reasoning that "[d]efendants' failure to appear in this litigation demonstrates their refusal to acknowledge their legal obligations, makes the threat of continued infringement likely, and underscores the ineffectiveness of a remedy at law." Similarly, in *Jasperilla*, 837 F.Supp. at 161, the court granted the same relief, finding that there was a "substantial threat of continuing copyright infringement" based on the defendant's "disregard of the copyrights held by ASCAP." *See also Disney*, 446 F.Supp.2d at 408 ("[F]urther infringements are a continuing threat, making remedies at law insufficient to compensate for Plaintiffs' injuries.").

An injunction prohibiting the performance of copyrighted music without a license generally does not present undue hardship on infringing defendants. *See White*, 618 F.Supp.2d at 511 (reasoning that defendants could either purchase a license or refrain from playing copyrighted music). Moreover, the public interest is clearly served by requiring companies to comply with copyright laws. *See Disney*, 446 F.Supp.2d at 408 ("[T]here is greater public benefit in securing the integrity of Plaintiffs' copyrights than in allowing [defendant] to make Plaintiffs' copyrighted material available to the public."); *White*, 618 F.Supp.2d at 511 ("It is easy to understand that the public interest reflected in the Constitutional protection of copyright, and the congressional enactment of the Copyright Act, is enhanced by issuance of a permanent injunction where copyright infringement has taken place.").

Here, Defendants' unauthorized public performance of copyrighted material, and future threats of similar performances, constitutes irreparable harm to Plaintiffs' copyrights. Additionally, monetary damages alone are an insufficient deterrent because Defendants' pattern of copyright infringement evinces a likelihood that infringement will continue in the future. Moreover, there is no evidence that a disproportionate hardship would be placed on Defendants; indeed, Defendants have the option of either purchasing a license or

refraining from playing copyrighted material. To the extent that this case implicates the public interest, it is best served by requiring adherence to copyright laws. Accordingly, Plaintiffs are entitled to a permanent injunction barring Defendants' public unlicensed performance of the four songs identified in the complaint.

In considering the scope of injunctive relief in similar cases, most courts have enjoined defendants from performing any ASCAP members' music without permission from the copyright owner or an ASCAP license. *See, e.g., EMI April Music, Inc. v. Jet Rumeurs, Inc.*, 632 F.Supp.2d 619, 624 (N.D.Tex. 2008) ("The Court recognizes, as other courts have, that the Plaintiffs here represent the interests of all ASCAP members whose music could be infringed by Defendants, and therefore finds that injunctive relief which protects all music in the ASCAP repertory is appropriate."); *Canopy Music Inc. v. Harbor Cities Broad., Inc.*, 950 F.Supp. 913, 916 (E.D.Wisc. 1997) (granting an injunction against the playing of all ASCAP music where defendant had clear notice of infringement). Among these courts are several in this circuit that have entered injunctive relief in the context of a default judgment. *See, e.g., Controversy Music*, 2010 WL 2607229, at *4-5; *Rodriguez*, 691 F.Supp.2d at 635; *White*, 618 F.Supp.2d at 512; *Jasperilla*, 837 F.Supp. at 161. In accord with these decisions, the court will grant a permanent

injunction barring Defendants from playing all songs in the ASCAP repertory unless and until they have purchased the requisite license.

### 3. Attorneys' Fees and Costs

The Copyright Act, 17 U.S.C. § 505, provides that "[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs . . . [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs."  The Fourth Circuit has adopted four factors to weigh in determining whether to grant attorneys' fees under § 505:  (1) "the motivation of the parties"; (2) "the objective reasonableness of the legal and factual positions advanced"; (3) "the need in particular circumstances to advance considerations of compensation and deterrence"; (4) "any other relevant factor presented."  *Diamond Star Bldg. Corp. v. Freed,* 30 F.3d 503, 505 (4th Cir. 1994); *see also White*, 618 F.Supp.2d at 512.

Here, there is no evidence in the record indicating that Plaintiffs' purpose in bringing this suit was malicious; rather, it appears Plaintiffs' only purpose in filing suit was to vindicate their rights under copyright laws.  There is ample evidence, on the other hand, suggesting that Defendants have repeatedly and knowingly violated copyright laws.  Moreover, Plaintiffs' legal positions are objectively reasonable, and an award of attorneys' fees would offer an incentive for plaintiffs

to bring claims defending their rights. *See White*, 618 F.Supp.2d at 512 ("[P]ersons in the same situation as Plaintiffs should be encouraged to bring such actions where their patient and thorough efforts to try to work with an infringer have been flatly rebuffed."). District courts in this circuit have regularly awarded costs and attorneys' fees for copyright infringement in similar circumstances. *See, e.g., Rodriguez*, 691 F.Supp.2d at 637-38; *White*, 618 F.Supp.2d at 512; *Jasperilla*, 837 F.Supp. at 162 (finding that awards of attorneys' fees in copyright cases is standard practice). Accordingly, Plaintiffs' have established entitlement to an award of attorneys' fees and costs.

Plaintiffs have not, however, submitted a properly supported fee petition and bill of costs. They state in their memorandum that they will submit an "appropriate Bill of Costs and an Affidavit of counsel by subsequent Motion setting forth expenses incurred by Plaintiffs." (ECF No. 9, at 13). They will be permitted to do so within fourteen days.

**IV. Conclusion**

For the foregoing reasons, Plaintiffs' motion for default judgment will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge